No. 52,240

STATE OF KANSAS, *Appellee,* v. GARRY D. MICK, *Appellant.*

(621 P.2d 1006)

Opinion filed January 17, 1981.

*Felix G. Kancel, Jr.,* of Kansas City, argued the cause and was on the brief for the appellant.

*James F. Foster,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Garry D. Mick was convicted of two counts of aggravated robbery (K.S.A. 21-3427), both occurring on the morning of February 23, 1979, at the Bruns Pharmacy.

Two men robbed this pharmacy in Kansas City, Kansas. Tom Bruns was ordered to fill two wastebaskets with drugs. He was then ordered to lie on the floor and his hands were tied. The clerk in the pharmacy, Mrs. Norma Good, was ordered to lie on the floor. Money was taken from both the cash register and from Mrs. Good's billfold. She was also tied up. The robbers then left the pharmacy carrying the two wastebaskets containing drugs and the money taken from the cash register and from Mrs. Good's personal billfold. (At the trial both Mr. Bruns and Mrs. Good identified the defendant Mick as the shorter of the two robbers,

the one who took the money from the cash register and from Mrs. Good's billfold.)

Later that same afternoon the Missouri police investigated a complaint at a motel in Missouri. When the manager and three police officers opened one of the rooms they found a man and woman lying on the bed in an unconscious condition. In the room the officers found a gun, some money and a wastebasket of drugs bearing the name of Bruns Pharmacy. A call was made to Kansas City, Kansas, and the robbery earlier in the day was discovered by the Missouri officers. The unconscious man was subsequently identified as Clyde Burkhart and after further investigation the police obtained the name of the defendant, Garry Mick. Mick was arrested but refused to waive extradition. He was returned to Kansas after extradition proceedings were completed. The additional facts material to the points raised will be developed as we discuss the issues.

Defendant-appellant alleges that the order under which he was detained by the Missouri authorities was illegal and void because he was detained in Missouri without a hearing for more than 90 days in violation of Mo. Rev. Stat. 548.151 and 548.171.

The appellant appears to be in error in his computation of the number of days between the day of his arrest and the date of his hearing. He was arrested on February 24, 1979. A hearing was granted after Missouri authorities issued the rendition warrant. This was on May 16, 1979, a period of 82 days from the date of his arrest. At the hearing appellant requested and was granted time to apply for a writ of habeas corpus. At the hearing on the petition for the writ the appellant raised several questions but none of them concerned the 90-day requirement of the Missouri statute which he now raises.

In interstate extradition proceedings, the prisoner is held under the extradition process only until the time he is brought into the jurisdiction of the demanding state, and he is thereafter held under the process issued by the courts of the demanding state. Consequently, the regularity of the extradition proceedings in an asylum state may be attacked only in the asylum state. After a fugitive has been delivered into the jurisdiction of the demanding state, the proceedings in the asylum state may no longer be challenged. *State v. Wellman,* 102 Kan. 503, 508, 170 Pac. 1052 (1918); *State v. Ulriksen,* 210 Kan. 795, 799, 504 P.2d 232 (1972);

*Ker v. Illinois,* 119 U.S. 436, 30 L.Ed. 421, 7 S.Ct. 225 (1886); 31 Am. Jur. 2d, Extradition § 74, p. 980.

The point which appellant seeks to raise here in the demanding state cannot now affect his conviction in this state. The point is one which could only have been raised in the asylum state of Missouri. The jurisdiction of a district court in Kansas to try an accused for a criminal offense committed in Kansas does not depend on how he came to be in this state. *State v. Ulriksen,* 210 Kan. at 799.

The appellant complains of a failure to receive a speedy trial. The 90-day requirement of K.S.A. 1979 Supp. 22-3402 was not violated. The appellant must be charged with the time he had feloniously escaped from jail and remained at large. He was returned to Kansas from Missouri a second time on March 25, 1980. His trial began on April 28, 1980. Eliminating the period of time that appellant was an escapee leaves less than 90 days chargeable to the prosecution. *State v. Porter, Green & Smith,* 228 Kan. 345, Syl. ¶ 6, 615 P.2d 146 (1980).

In addition the appellant raises the question of lack of a constitutional speedy trial which is not necessarily dependent upon the requirements of a statutory speedy trial as imposed by the state legislature. The case of *Barker v. Wingo,* 407 U.S. 514, 532, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), sets forth the interests of an accused which the constitutional right to speedy trial is designed to protect. This right is designed to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility the defense of the accused will be impaired.

Much of the delay in the present case arose by reason of the voluntary actions of the appellant. He refused to waive extradition and sought additional time to process a petition for writ of habeas corpus in Missouri. When unsuccessful in that, he was returned to Kansas for trial but he then escaped from jail and returned to Missouri. Much of the delay was of his own choosing. He has failed to establish material prejudice to any of the rights mentioned in *Barker v. Wingo,* 407 U.S. at 531, 532 and 533. The point is without merit.

Appellant alleges error by reason of the admission in evidence of a transcript of the testimony of Kim Gordon taken at the preliminary hearing. The applicable statute, K.S.A. 60-459, provides:

"**Definitions.** As used in K.S.A. 60-460, its exceptions and in this section:

. . . .

"(g) 'Unavailable as a witness' includes situations where the witness is (1) exempted on the ground of privilege from testifying concerning the matter to which his or her statement is relevant, or (2) disqualified from testifying to the matter, or (3) unable to be present or to testify at the hearing because of death or then existing physical or mental illness, or (4) absent beyond the jurisdiction of the court to compel appearance by its process, or (5) *absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts.*

"*But a witness is not unavailable (1) if the judge finds that his or her exemption, disqualification, inability or absence is due to procurement or wrongdoing of the proponent of his or her statement for the purpose of preventing the witness from attending or testifying, or to the culpable neglect of such party,* or (2) if the unavailability is claimed under clause (4) of the preceding paragraph and the judge finds that the deposition of the declarant could have been taken by the exercise of reasonable diligence and without undue hardship, and that the probable importance of the testimony is such as to justify the expense of taking such deposition." Emphasis supplied.

## And K.S.A. 60-460:

"**Hearsay evidence excluded, exceptions.** Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . .

"(c) *Depositions and prior testimony.* Subject to the same limitations and objections as though the declarant were testifying in person, (1) testimony in the form of a deposition taken in compliance with the law of this state for use as testimony in the trial of the action in which offered, or (2) *if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given as a witness in another action or in a preliminary hearing or former trial in the same action, or in a deposition taken in compliance with law for use as testimony in the trial of another action,* when (*i*) the testimony is offered against a party who offered it in his or her own behalf on the former occasion, or against the successor in interest of such party, or (*ii*) *the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered,* but the provisions of this subsection (c) shall not apply in criminal actions if it denies to the accused the right to meet the witness face to face;" Emphasis supplied.

Defendant alleges that the State did not make a "good faith effort" nor did it use "reasonable diligence" in attempting to produce the witness for trial. The trial court heard evidence on this question from both an investigator who spent considerable time trying to locate the witness and a former assistant district attorney who had originally been assigned to prosecute the case. We need not set forth the efforts in attempting to locate this

witness. Suffice it to say we are convinced the trial court was correct in admitting the testimony given at the preliminary hearing. The witness was unavailable. The State made a good faith effort to secure the attendance of the witness and exercised reasonable diligence. The testimony was given at the preliminary hearing and the defendant at that time was represented by an attorney who availed himself of the opportunity to cross-examine the witness. Under these circumstances the provisions of the above statutes were complied with. The right of the accused to be confronted by his accusers was honored. The witness' prior testimony bore sufficient indicia of reliability and afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement.

It is recognized that the personal presence of a witness is more advantageous to the accused, but the rights of the public are not to be defeated in order that an incidental benefit be preserved to the accused; hence, it is the general rule that the right of confrontation under the Sixth Amendment and Section 10 of the Kansas Bill of Rights is satisfied, in cases of necessity, if the accused has been once confronted by the witness against him in any stage of the proceedings on the same accusation and has had an opportunity of cross-examination by himself or counsel in his behalf. *State v. Lomax & Williams,* 227 Kan. 651, 608 P.2d 959 (1980); *State v. Baker,* 227 Kan. 377, 607 P.2d 61 (1980); *Ohio v. Roberts,* 448 U.S. 56, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980). We have examined appellant's additional claim that his attorney at the preliminary hearing conducted an inadequate cross-examination of the witness. We have no hesitation in saying this claim is disproved by the record and without merit.

Appellant next questions the refusal of the trial court to declare a mistrial when an officer testified that as a result of a conversation with Kim Gordon, "She also had given or gave us the name of Mick or Mickie." Appellant alleges this statement was inadmissible hearsay requiring a new trial. The trial court sustained an objection to this volunteered statement. The remark was stricken and the jury instructed to disregard it. The statement was unsolicited, it was of no great moment, and an admonition to the jury normally cures prejudice from an improper admission of evidence. *State v. McGhee,* 226 Kan. 698, 702, 602 P.2d 1339 (1979). This is a matter within the discretion of the trial court and in this

case the refusal to declare a mistrial was certainly no abuse of discretion.

At oral argument counsel for appellant raised an additional point for the first time at the insistence of the appellant. It is urged that the testimony of Kim Gordon should not have been admitted because the testimony was not voluntarily given. It is urged that the testimony was given as a result of a "deal" made with the State to clear both her and her boyfriend, Bill Fincher. This matter was not raised or presented to the trial court, no basis for such a claim appears in the record before this court, and the point is not properly before this court for decision. The State has had no opportunity to respond and reversible error cannot be based thereon. The point is without merit.

Appellant alleges the trial court erred in overruling his motion for acquittal at the close of the evidence on the ground of insufficiency of the evidence.

The sufficiency of the evidence test is set out in *State v. Racey,* 225 Kan. 404, 590 P.2d 1064 (1979); in *State v. Sanders,* 227 Kan. 892, 895, 610 P.2d 633 (1980); and *State v. Peoples,* 227 Kan. 127, Syl. ¶ 2, 605 P.2d 135 (1980).

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?" 227 Kan. 127, Syl. ¶ 2.

It would serve no useful purpose to iterate those parts of the evidence where appellant was identified as one of the robbers. He was identified as such by both Mr. Bruns and Mrs. Good. He was also tied to the robbery by the testimony of Kim Gordon. The claim that the drugs were never in the possession of the appellant is without substance. The robbery was committed by two persons. Kim Gordon testified that she saw appellant and Clyde Burkhart carry out a couple of buckets from the pharmacy to the car on the day of the robbery. The drugs had been placed in the buckets or wastebaskets at the request of the robbers. The evidence was sufficient under the rule stated above.

Other matters raised in appellant's brief have been examined and found to be without merit. The judgment is affirmed.