No. 60,446

STATE OF KANSAS, *Appellee*, v. CHRIS KUONE, *Appellant*.

(757 P.2d 289)

Opinion filed June 3, 1988.

*Michael F. Brunton*, of Topeka, argued the cause and was on the brief for the appellant.

*Sue Carpenter*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Chris Kuone was convicted by jury trial in the Shawnee County District Court of indecent liberties with a child, K.S.A. 1987 Supp. 21-3503, and aggravated criminal sodomy, K.S.A. 1987 Supp. 21-3506. He was sentenced to concurrent terms of not less than three nor more than ten years for indecent liberties, and not less than five nor more than twenty years for aggravated criminal sodomy.

Kuone raises five issues on appeal. He contends that the

district court erred: (1) in ruling that out-of-court statements made by the alleged victim were admissible pursuant to K.S.A. 1987 Supp. 60-460(dd) in that (a) the victim was not "unavailable" to testify, and (b) there were not "adequate indicia of reliability" surrounding her out-of-court statements; (2) in excluding evidence of the defendant's good character; (3) in requiring the defendant to introduce the entirety of the transcript of the alleged victim's preliminary hearing testimony; and (4) in limiting the defendant's closing argument.

The main evidence against the defendant at trial took the form of hearsay statements made by the alleged victim, F.S., who is eleven years old and who is mildly retarded. She functions at the late first grade to early third grade level. The trial court determined that her hearsay statements relating to the charged crimes were admissible pursuant to K.S.A. 1987 Supp. 60-460(dd).

Before proceeding further, it will be helpful to discuss some of the principles and rules to be applied when admitting testimony under that section and when reviewing it on appeal. K.S.A. 1987 Supp. 60-460(dd) reads in part as follows:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(dd) . . . In a criminal proceeding . . . , a statement made by a child, to prove the crime . . ., if:

"(1) The child is alleged to be a victim of the crime or offense . . .; and

"(2) the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable and the child was not induced to make the statement falsely by use of threats or promises.

"If a statement is admitted pursuant to this subsection in a trial to a jury, the trial judge shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, any possible threats or promises that might have been made to the child to obtain the statement and any other relevant factor."

We first discussed the statute in *State v. Myatt*, 237 Kan. 17, 697 P.2d 836 (1985). There, it was challenged as being unconstitutional on various grounds. Chief Justice Schroeder, in a unanimous opinion for the court, said:

"In *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), the United States Supreme Court established a two-part test for determining whether admission of out-of-court statements of a witness who does not testify at trial violates the defendant's right to confrontation. First, the witness must be unavailable. Second, the witness's out-of-court statements must have 'adequate indicia of reliability.'

'Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. *In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.*' (Emphasis added.) 448 U.S. at 66.

"K.S.A. 60-460(dd) allows for the admission of a child victim's hearsay statements only if the two prongs of *Roberts* are met. First, the trial judge must hold a hearing to determine whether the child is disqualified or unavailable as a witness. See K.S.A. 60-417. A child is considered to be unavailable for constitutional purposes if the trial court determines that the child is incompetent to testify. *Lancaster v. People*, 200 Colo. 448, 453, 615 P.2d 720 (1980).

"If the trial judge finds the child is 'unavailable,' he must determine if the statement is 'apparently reliable' and 'the child was not induced to make the statement falsely by use of threats or promises.' See K.S.A. 60-460(dd). It is apparent to this court the legislature intended to incorporate the *Roberts* standard for admissibility into this statute. Through the use of the words 'apparently reliable' it is implicit that the judge must find the evidence contains 'particularized guarantees of trustworthiness' since the new statute is not a 'firmly rooted hearsay exception.'

"The determination of reliability and trustworthiness must be made on a case-by-case basis. Such factors as the age of the child; his or her physical and mental condition; the circumstances of the alleged event; the language used by the child; the presence of corroborative physical evidence; the relationship of the accused to the child; the child's family, school, and peer relationships; any motive to falsify or distort the event; and the reliability of the testifying witness can be examined. See, *e.g., United States v. Nick*, 604 F.2d 1199; *State v. Rodriquez*, 8 Kan. App. 2d [353, 355-57, 657 P.2d 79, *rev. denied* 233 Kan. 1093 (1983)]. Contrary to the defendant's argument, the statute does not allow admission of the hearsay statements of a child victim for the sole reason that the statement was made by a child.

"Therefore, we hold K.S.A. 60-460(dd) does not per se violate the Sixth Amendment right to confrontation." 237 Kan. at 24-25.

In *Myatt*, both parties stipulated that the six-year-old child victim was disqualified as a witness, and thus the first prong of *Roberts* was satisfied. Our opinion discussed the evidence at length, and concluded that the trial court did not err in determining the hearsay statements were "apparently reliable," and in admitting them in evidence.

In *In re Mary P.*, 237 Kan. 456, 701 P.2d 681 (1985), we found

that the hearsay exception contained in 460(dd) did not apply in proceedings under the Kansas Juvenile Offenders Code. The legislature has since amended the statute, and it now specifically provides that it is applicable in "a proceeding pursuant to the Kansas juvenile offender's code."

*State v. Lanter,* 237 Kan. 309, 699 P.2d 503 (1985), was an indecent liberties case in which trial was held before our opinion in *Myatt.* Since the trial court in *Lanter* had not held a hearing and made the specific *Roberts* findings required by the statute, we remanded the case to the trial court for further proceedings in conformity therewith.

In *State v. Jackson,* 239 Kan. 463, 721 P.2d 232 (1986), we quoted from *Myatt,* stated the procedure for admission of testimony under 460(dd), and reviewed the action of the trial court in admitting such evidence. In *State v. Johnson,* 240 Kan. 326, 729 P.2d 1169 (1986), we again discussed the two-part test for determining the admission of out-of-court statements of a victim under 460(dd), quoted from *Myatt,* and analyzed challenges to other statutes in light of *Myatt* and *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). In *State v. Clark,* 11 Kan. App. 2d 586, 730 P.2d 1104 (1986), the Court of Appeals was concerned with the failure of the trial court to give the particular instruction required when a child's hearsay testimony was admitted under 460(dd). The defendant's conviction was reversed on the one count requiring such an instruction.

We will first consider defendant's second contention, that there were not "adequate indicia of reliability" surrounding the out-of-court statements. The out-of-court statements made by F.S. to her special education teacher, her mother, and an investigating police officer, as well as her testimony given at the preliminary examination, were entirely consistent. No contradictions of any consequence occur among any of the statements made by F.S. to these persons. She described the defendant's sexual activities with her, and said that the defendant threatened to shoot her mother and brother if she told anyone what he had done. F.S. first revealed Kuone's actions only upon the questioning by her special education teacher, which occurred after the teacher noticed that F.S. was unusually unsociable and "very elusive, didn't want to speak to anybody, even when going over

to her, she appeared to just stare into space, and didn't really want to interact with anyone." F.S.'s mother also noticed the significant change in her daughter's behavior, and testified that she had discovered blood in F.S.'s underwear, although F.S. had not begun to menstruate. There appears to have been no ill feeling between the families of the victim and the defendant, and no reason for her to concoct an untrue story. Based upon this evidence, the trial court did not err in determining that the out-of-court statements made by F.S. possessed apparent reliability and, as testified to by the teacher, F.S.'s mother, and the officer, that there was no inducement to make false statements by the use of threats or promises.

We turn next to the defendant's claim that F.S. was not unavailable to testify as a witness within the meaning of K.S.A. 1987 Supp. 60-460(dd)(2). The trial court characterized the basis for its finding of unavailability differently on various occasions. It first indicated that the basis for its finding of unavailability was the potential harm to F.S. if she testified at trial. Later, the trial court indicated that the basis for its ruling was a finding that F.S. was incompetent as a witness, and "out of contact with reality." The trial court appears to have considered both. Later in the hearing, explaining his ruling that the child was unavailable, the trial judge said:

"The basis of my ruling was the testimony of the doctor after the preliminary hearing, and after examination of this young lady, she was out of contact with reality. That's the exact words. Prior to that, prior to the preliminary hearing in May when he visited with her, that was not the case. That testimony, plus other testimony that he offered about the trauma that was caused by the complete breakdown as a result of the preliminary hearing was sufficient basis to find her unavailable to testify."

Dr. Alan D. Megibow, a child psychiatrist, testified that he examined F.S. prior to the time she testified at the preliminary examination. He also examined her after her court appearance. He stated that there was a dramatic difference clinically. Prior to her appearance in court there was no clinical evidence of any psychotic functioning. There were no clinical psychotic findings. Afterwards, the doctor found her to be very disorganized, not fully in contact with reality, difficult to manage, disturbed in her thinking, and exhibiting a heightened level of anxiety. In his

opinion, the impact of further court appearances would be extremely disorganizing for her. As to her earlier statements and preliminary examination testimony, the witness found consistency and detail far beyond what one would expect a child of her age and intellect to imagine. He had no reason to disbelieve her. He expressed the opinion that coming into the courtroom again as a witness would be a disastrous situation for her emotionally. He expressed the opinion that "there's a great likelihood of this girl undergoing another severe psychotic break requiring acute hospital entries and medication," and that further testimony would be more than painful; it would be disorganizing for her, and make her "far less functional than she is now, requiring all kinds of treatment that, for the moment, she's getting along okay without."

Dr. Megibow concluded his testimony on cross-examination by stating that future testimony of F.S. would depend upon her emotional status at the time. He could not state with medical certainty whether she could distinguish between reality and fantasy, or be able to recall and recount her past experiences. He testified, "Under stress, I don't know what I would expect."

Based upon Dr. Megibow's testimony, the trial court found that F.S. was unavailable to testify as a witness within the meaning of 460(dd)(2). The defendant argues that only incompetence can satisfy the unavailability requirement of the statute. He argues that K.S.A. 60-417 is controlling for the purpose of determining the unavailability of a witness. That statute provides in substance that a person is *disqualified* to be a witness if a judge finds that the proposed witness is incapable of expressing himself or herself concerning the matter so as to be understood by the judge and jury, or the proposed witness is incapable of understanding the duty of a witness to tell the truth. Defendant relies upon our opinion in *Myatt* to support his argument.

Defendant's contention is incorrect, although he correctly notes that in *Myatt*, 237 Kan. at 24-25, we said:

"A child is considered to be unavailable . . . if the trial court determines that the child is incompetent to testify."

However, both parties in *Myatt* stipulated that the child was disqualified as a witness. The stipulation satisfied the first prong

of *Roberts*. Unavailability was not an issue. K.S.A. 1987 Supp. 60-460(dd)(2) specifically states "disqualified *or* unavailable as a witness." The constitutional discussion in *Myatt* was based upon the decision of the United States Supreme Court in *Ohio v. Roberts*. The two-part test for determining the admissibility emanates from that decision. In *Roberts*, the unavailability prong of the test was satisfied not because the witness was incompetent, but because the State was unable to locate the witness after having made a good-faith effort to obtain his presence at trial. 448 U.S. at 74-75. Neither *Myatt* nor *Roberts* hold that incompetence is the sole basis for a finding that a child witness is unavailable.

The child hearsay statute expressly uses the term "unavailable as a witness." The same term is defined in K.S.A. 60-459:

"**60-459. Definitions.** As used in K.S.A. 60-460, its exceptions and in this section:

. . . .

"(g) 'Unavailable as a witness' includes situations where the witness is (1) exempted on the ground of privilege from testifying concerning the matter to which his or her statement is relevant, or (2) disqualified from testifying to the matter, or (3) unable to be present or to testify at the hearing because of death or then existing physical or mental illness, or (4) absent beyond the jurisdiction of the court to compel appearance by its process, or (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

Under K.S.A. 60-459(g)(2), a person may be unavailable as a witness where he or she has been disqualified from testifying as incompetent under K.S.A. 60-417. However, K.S.A. 60-459(g) also provides other situations in which a person may be found to be unavailable as a witness. Particularly relevant to the present case is subsection (3), which provides that a person may be unavailable where she is "unable to be present or to testify at the hearing because of death or then existing physical or mental illness." Thus, a physical or mental condition which prevents a witness from appearing in court to testify may also constitute unavailability.

In *State v. Ruebke*, 240 Kan. 493, 517, 731 P.2d 842 (1987), the absent witness was held to be unavailable where he was suffering from second- and third-degree burns. There was a letter from the witness' doctor stating "that it would not be in his best physical and mental well-being to appear in court and testify,"

and there was testimony that he was sedated daily for pain and was not totally alert until late afternoon. 240 Kan. at 518. In *State v. Steward*, 219 Kan. 256, 547 P.2d 773 (1976), the out-of-court witness was in the "late stages of pregnancy, with high blood pressure and other complications." 219 Kan. at 262. The doctor for the witness whose baby was due one to two months after trial was scheduled to commence testified that "she was in no shape to travel to Kansas City" for the trial. 219 Kan. at 262. In both *Steward* and *Ruebke*, the determination of witness unavailability was based on the potential physical harm to the witnesses were they to testify at trial. In the present case, there is significant medical testimony that the witness would likely suffer serious emotional or mental difficulties from testifying at trial. Neither party has cited a Kansas case dealing with the unavailability of a witness-victim based on emotional or mental illness, and we have not found a discussion of this specific issue by a Kansas appellate court.

Several appellate courts in other jurisdictions have addressed the issue of the unavailability of witnesses in sexual assault cases due to the psychological trauma inflicted upon the witness. In *Warren v. United States*, 436 A.2d 821 (D.C. 1981), the defendant was charged with eleven counts of kidnapping and sexual assault. On retrial, the trial court had excluded the hearsay statements of one of the complaining witnesses, Linda Jenkins, finding insufficient evidence to conclude that Jenkins was unavailable as a witness. The trial court noted that the medical experts testifying in the case disagreed regarding the relative mental harm likely to be suffered by Jenkins' testifying "in relation to the burden carried by the average victim-witness." 436 A.2d at 829.

The trial court, however, found that a second complaining witness, Marilyn Reed, was unavailable. The District of Columbia Court of Appeals upheld the conclusion that Reed was unavailable to testify at trial, noting: "In contrast to the conflicting prognosis for Jenkins, the experts substantially agreed on the severity of the injury to befall Marilyn Reed were she forced to relive the events of her rape through another court appearance." *Warren*, 436 A.2d at 829. The medical testimony indicated that Reed was suffering from severe mixed psychoneurosis with

emphasis on depressive mood. She was suicidal and remained so at the time of the hearing. She had changed her name, religion, and lifestyle since the rape. One doctor testified that the trauma of again testifying in court would possibly result in permanent psychological injury. On appeal, the Court of Appeals quoted the trial court's finding that the medical experts agreed that Reed " 'would undergo far greater mental anguish than normally accompanies court appearances of the victims of rapes (and presumably other such crimes as kidnapping, terrorism, and hijacking) and that her appearance in court . . . would be likely to lead to severe psychosis, even possible suicide.' " 436 A.2d at 828. The Court of Appeals found that the record supported the trial court's conclusion.

The District of Columbia Court of Appeals approved the trial court's action which "cautiously extended the traditional definition of witness unavailability to include psychological unavailability of the type demonstrated in the case of Marilyn Reed, but to exclude the lesser degree of psychological infirmity demonstrated by Linda Jenkins." 436 A.2d at 828. In so ruling, the Court of Appeals stressed the limited nature of its ruling:

"The ruling below was not only supported by the evidence, but was also a reasonable construction of the witness unavailability rule. We do not intend to sanction a new category of medical unavailability in all cases where witnesses are likely to suffer adverse emotional or psychological effects as a result of testifying against their assailants. But in the extreme circumstances presented here, we agree that the grave risks to the witness' psychological health justify excusing her live in-court testimony. The expert testimony relating to Reed's mental health established that there was both a high likelihood of temporary psychological injury, perhaps even psychosis, and a possibility of permanent psychological injury." *Warren*, 436 A.2d at 829-30.

The court cited the only two cases it was aware of that had interpreted codified rules of evidence which included mental illness within the definition of unavailability:

"In *People v. Gomez*, 26 Cal. App. 3d 225, 230, 103 Cal. Rptr. 80, 83-84 (1972), the California statute was interpreted to require a showing that 'the illness or infirmity must be of comparative severity; it must exist to such a degree as to render the witness' attendance, or his testifying, relatively impossible and not merely inconvenient.' In *Gomez*, the witness' unavailability under this standard was established by two psychiatrists who testified that she was 'very vulnerable to stress; she had a tendency to psychomotor seizures which were difficult to diagnose and treat' and that her present and future mental health might well be injured by testifying before the court. *Id.* at 228, 103 Cal. Rptr. 82.

"The decision in *People v. Lombardi*, 39 App. Div. 2d 700, 701, 332 N.Y.S.2d 749, 750-51 (1972), *aff'd* 33 N.Y.2d 658, 348 N.Y.S.2d 980, 303 N.E.2d 705 (1973), *cert. denied*, 416 U.S. 906, 94 S. Ct. 1611, 40 L. Ed. 2d 111 (1974), upheld a lower court finding that it would endanger the witness' health to testify again, where testimony by the witness' husband and her psychiatrist could reasonably have satisfied the court that had the witness 'been required to appear and testify in person . . . her mental and physical health would have been seriously jeopardized' and would have resulted in a 'further and perhaps successful attempt at suicide.' The witnesses in both the California and New York cases were rape victims." *Warren*, 436 A.2d at 827.

In finding the trial judge's ruling was supported by the evidence, the court cited with approval the following factors as relevant to the determination of whether a witness is unavailable because of anticipated psychological trauma or disability if required to testify:

"(1) the probability of psychological injury as a result of testifying, (2) the degree of anticipated injury, (3) the expected duration of the injury, and (4) whether the expected psychological injury is substantially greater than the reaction of the average victim of a rape, kidnapping or terrorist act. Just as in the case of physical infirmity, it is difficult to state the precise quantum of evidence required to meet the standard of unavailability. The factors should be weighed in the context of each other, as well as in the context of the nature of the crime and the pre-existing psychological history of the witness." *Warren*, 436 A.2d at 830 n.18.

The Seventh Circuit in a case where the prosecution sought to have the victim declared unavailable because of then existing mental illness, applied similar standards in *Burns v. Clusen*, 798 F.2d 931, 937-38 (7th Cir. 1986), and stated:

"In a situation where the State argues that a witness is unavailable because of mental illness, the judge must consider both the duration and the severity of the illness. With regard to duration, it is not essential to a finding of unavailability that the illness be permanent. The duration of the illness need only be in probability long enough so that, with proper regard to the importance of the testimony, the trial cannot be postponed, *United States v. Amaya*, 533 F.2d 188, 191 (5th Cir. 1976), citing 5 Wigmore, *Evidence* § 1406(a) (Chadbourn rev. 1974). In the case of a mental rather than a physical disability, the trial judge's task is more difficult because there is often greater uncertainty as to the prognosis. *Parrott v. Wilson*, 707 F.2d 1262 (11th Cir.), *cert. denied*, 464 U.S. 936, 104 S. Ct. 344, 78 L. Ed. 2d 311 (1983). A judge must weigh the desirability of a speedy trial against the possibility that a further delay may find the declarant competent.

"As to severity, mental illness itself may not automatically render a witness unavailable. The judge must consider the symptoms, what tasks a witness is then capable of. While all victims of violent crimes may suffer emotional trauma, some

victims may suffer far greater anguish than normally accompanies court appearances."

The Seventh Circuit concluded that the sexual assault victim was not proven to suffer from a psychological condition of such duration that she could be considered unavailable as a witness. The court stressed the lack of consistent medical expert testimony with regard to the duration of the victim witness' mental impairment.

At the close of the 460(dd) hearing in this case, the trial court found that the child was unavailable as a witness, that her statements were apparently reliable, and that she was not induced to make the statements falsely by use of threats or promises. Our function, as an appellate court, is to determine from a thorough review of the record whether there is sufficient competent evidence, when viewed in the light most favorable to the prevailing party below, to support the trial court's findings.

The District of Columbia Court of Appeals set forth in *Warren* several factors as relevant to the determination of whether a witness is unavailable. These factors, while not exclusive, are helpful. The trial judge in the present case did not have these factors called to his attention to assist in evaluating the evidence, but they may be helpful in future cases. We will review the evidence before the trial judge in this case in light of the *Warren* factors.

First, the testimony of the child psychiatrist indicates that, in his professional opinion, requiring the child to give further testimony in court would be disastrous to her emotionally. He was of the opinion that there is great likelihood that she would undergo another severe psychotic breakdown. This would require further hospitalization, medication, and treatment. Her earlier testimony caused her to suffer an acute break with reality. The probability of psychological injury as a result of testifying further would appear probable if not certain.

Second, the witness was a retarded child who attended special education classes. She had had the same teacher for four years, and she was able to learn on approximately a second grade level. She was apparently in full contact with reality prior to the preliminary hearing. Requiring her to testify would, according to the child psychiatrist, likely cause another severe psychotic

break, such as she suffered following the preliminary examination. It would be more than painful; it would be disorganizing, would cause her to be less functional than she now is, and would require all kinds of treatment which she does not otherwise need. The degree of anticipated injury appears to be substantial.

Third, the psychiatrist expressed no opinion as to the expected duration of the expected psychological injury. However, the child suffered a severe psychological injury at the time of the preliminary examination, and was hospitalized, given medication, and treated. Almost three months later, when the 460(dd) hearing was held, the child had not returned to her normal mental state. It is obvious that the psychiatrist was not speaking of a trifling or fleeting psychological injury, but one that would continue for many months, a substantial injury.

Finally, from what we have said above, it is obvious that the expected psychological injury to this child, should she be required to testify further, would be substantially greater than the reaction of the average victim of a rape or other sexual assault. The trial court was certainly aware that most victim witnesses do not, as a result of testifying, suffer severe and long-lasting breaks with reality requiring hospitalization.

We conclude that there was ample competent evidence to support the finding of the trial court that the witness was unavailable. This includes her history, retardation, and mental condition; the extent and severity of the breakdown she suffered immediately following the preliminary examination; and the opinion of the child psychiatrist as to the consequences to be expected should she be required to testify in the case again.

Defendant next contends that the trial court erred in excluding the opinion testimony of witnesses as to his good character. During the course of the trial, the defense attempted to introduce the testimony of Mr. and Mrs. Thomas M. Smith and Jim Rogers, friends and neighbors of the defendant. Counsel for the defendant characterized their testimony in a proffer to the court:

"That all these people are neighbors of Mr. Kuone; that all of them that had contact with him over a fairly regular basis over the last eight or nine years; that all of them have come to know him; that they, based upon their knowledge of him and their conversations with him and seeing him in the community, in their neighborhood, that they have an opinion as to whether or not he has a propensity

for violence or is a violent-sort of fellow, I believe their testimony would be, 'No,' that they do not believe that; that whether they have an opinion as to whether he is a good citizen and good, law-abiding neighbor, and I think their testimony would be that, in their opinion, he is."

The trial court refused to admit the testimony of Rogers and the Smiths based upon its conclusions that character evidence in the form of the opinion of lay witnesses is inadmissible and that the evidence lacked probative value.

On appeal, the State argues that the basis for the exclusion of the opinion testimony in the present case was a lack of foundation. However, lack of foundation was not the basis upon which the opinion evidence in the present case was excluded, nor would such an exclusion be justifiable had such been the case. The portion of the record that the State cites relates not to the *opinion* testimony of the defendant's witnesses, but to the initial questioning of Thomas Smith regarding his knowledge of the defendant's *reputation* within the community. Smith testified that he had no knowledge of the defendant's reputation within the community. However, there is no basis in the record for finding lack of foundation for the opinion evidence of the witnesses. Smith testified that he is the defendant's neighbor and has known the defendant for eight to ten years. With regard to the other character witnesses that the defendant sought to introduce, defense counsel's proffer indicated that they had been in personal contact with the defendant on a fairly regular basis for eight to nine years and that they were prepared to give an opinion on his lack of propensity for violence and his law-abiding nature. The victim had said that the defendant threatened to shoot her mother and her brother if she told anyone of defendant's actions, and thus the proffered character evidence was material. There was no basis for concluding that the personal opinion testimony of the witnesses was without foundation. Each had lived nearby and had had frequent contact with the defendant over an eight- to ten-year period. Instead, the trial court's exclusion of the three witnesses' opinion testimony can be justified only if the rationale offered by the trial court for its ruling is correct; that is, that lay witness opinion testimony as to the defendant's good character is inadmissible and without probative value.

Both conclusions of the trial court are erroneous. K.S.A. 60-447 provides the basic standard for the introduction of character evidence as proof of a person's conduct. The pertinent portions of that statute provide:

"Subject to K.S.A. 60-448 when a trait of a person's character is relevant as tending to prove conduct on a specified occasion, such trait may be proved in the same manner as provided by K.S.A. 60-446, except that . . . (b) in a criminal action evidence of a trait of an accused's character as tending to prove guilt or innocence of the offense charged, (i) may not be excluded by the judge under K.S.A. 60-445 if offered by the accused to prove innocence, and (ii) if offered by the prosecution to prove guilt, may be admitted only after the accused has introduced evidence of his or her good character."

K.S.A. 60-448 prohibits the use of evidence of a person's character with respect to care or skill to prove the quality of his or her conduct on a particular occasion. That is not applicable in the present case. K.S.A. 60-446 defines the forms by which character may be proven:

"When a person's character or a trait of his or her character is in issue, it may be proved by testimony in the form of *opinion*, evidence of reputation, or evidence of specific instances of the person's conduct, subject, however, to the limitations of K.S.A. 60-447 and 60-448." (Emphasis supplied.)

K.S.A. 60-446 explicitly includes opinion testimony within the permitted manners of proof of a person's character. In his work, 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-446 (1979), Judge Gard says: "Evidence in the form of opinion as to a character trait in issue is generally admissible under prevailing rules and is made so by this section." In addition, the trial court erred in concluding that the evidence of the defendant's good character would lack probative value. When a defendant in a criminal action seeks to present evidence of his character which would tend to prove innocence, K.S.A. 60-447 expressly provides that the evidence may not be excluded under K.S.A. 60-445, which gives the trial judge the discretion to exclude evidence when its probative value is substantially outweighed by the risk of prejudice.

In *State v. Sullivan & Sullivan,* 224 Kan. 110, 124, 578 P.2d 1108 (1978), the trial court refused to allow the defendant's employer to testify as to the defendant's good character. In holding the trial court erred, we said:

"K.S.A. 60-447 provides, if a character trait is relevant, evidence of specific instances which tend to prove the trait may be introduced in a criminal action *if offered by the accused to prove innocence.* K.S.A. 60-448 relates to traits of care and skill and is inapplicable in the present case.

"The state argues the testimony was offered in support of defendant's credibility and properly excluded as not bearing on truth and veracity. The record indicates that appellant John was attempting to introduce evidence of his good character and it was error for the trial court to sustain the state's objection to this evidence. It is not necessary for us to determine whether the error was harmless since a new trial is necessary on other grounds."

The decision of a defendant to offer evidence of his good character is not a decision lightly undertaken since, once introduced, the prosecution may provide rebuttal evidence of the defendant's lack of good character to prove guilt. In the present case, however, the defendant concluded that it would be beneficial to his case to introduce evidence relating to his law-abiding character and his lack of propensity for violence. The case against the defendant was almost solely based upon the testimony of F.S. The defendant's testimony and the evidence of his good character comprised his entire defense. The physical evidence was inconclusive and, contrary to the State's contention, no other character witness was allowed to testify for the defendant. We conclude that the trial court erred in refusing to admit the evidence.

Whether this error was harmless, however, is another question. Kuone was charged with two crimes, indecent liberties with a child and aggravated criminal sodomy. The State did not charge that the victim's resistance was overcome by force or fear, or that the defendant used force on any occasion. Although only two counts were charged, there was evidence of a series of similar incidents involving defendant with the eleven-year-old mentally retarded victim over a period of time. The character trait at issue was whether the defendant was a child molester or pedophile.

The excluded testimony has nothing to do with proving defendant's guilt or innocence of the two crimes charged. The proffered character evidence went only to refute a statement by the victim, a statement of fact unnecessary to establish the offenses. Character testimony that would be relevant to disprove the charges, for example, would be that defendant had been

around young girls frequently in situations where similar conduct could have occurred, but that the defendant had always behaved in an acceptable manner. The proffered testimony had no bearing on whether defendant committed the acts charged, and for that reason we hold that its exclusion, while error, was harmless.

The defendant next takes issue with the trial court's ruling on the introduction into evidence of the preliminary hearing transcript. During the presentation of the defendant's case, defense counsel sought to introduce the transcript of the cross-examination of F.S. taken at the preliminary hearing. The trial court ruled that counsel could present the transcript of the cross-examination testimony, but required that the direct examination of F.S. also be presented. The defendant now argues that the trial court erred in requiring him to introduce, as a part of his defense, evidence of F.S.'s direct examination testimony. We agree.

However, the defendant does not indicate the nature of any prejudice as a result of the trial court's action. The direct examination testimony was properly admissible after the defendant introduced F.S.'s cross-examination, but should have been admitted and clearly identified as part of the State's case, rather than the defendant's. We have repeatedly held that errors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining do not require reversal when substantial justice has been done. *State v. Lowe*, 238 Kan. 755, 765, 715 P.2d 404 (1986). That is the case here; the evidence was admissible, and we find no substantial prejudice or reversible error in the manner in which it was admitted.

Finally, defendant contends the district court erred in limiting his closing argument. In the course of the statements made by F.S. against the defendant, she also indicated that she had had sexual contacts with several other persons. Counsel for the defendant now argues that the trial court erroneously prohibited him from asking the jury during closing argument why the authorities had failed to investigate, apprehend, and charge any other individuals.

The trial court gave the defendant broad leeway to stress F.S.'s statements relating to sexual contacts with persons other than the defendant, but prohibited speculation upon why the State had

failed to apprehend and prosecute other individuals. The trial court stated:

"I want to indicate to Mr. Brunton that I think he can argue about the testimony relative to these other people, but I don't think he can argue, 'Why aren't they sitting at the defense table?'

. . . .

". . . I think you have a right to talk about the accusations made by [F.S.] against these other people, but I don't think you have a right to inflame. I think it would [be inflaming] the jury to a point where I don't know if a jury can be repaired, so I would allow you broad discretion in your argument, but I'm not going to allow you to talk about, 'Why haven't they been charged?' "

The scope of oral argument generally lies within the sound discretion of the trial court, and the court's rulings will form no basis for a reversal absent a showing of abuse of discretion. Here, we find no abuse of discretion in the modest limitation placed by the court on defense counsel's closing argument. The matter of why others had not been charged was outside of the evidence, outside of the issues in this trial, and wholly immaterial. However, even assuming that the trial court abused its discretion in limiting defense counsel's closing argument, no reversible error is presented in this case. The record indicates that counsel for the defendant failed to make any formal objection to the trial court's decision. Indeed, the record fails to reveal even an informal expression of disagreement with the trial court's ruling.

The judgment of the trial court is affirmed.

ALLEGRUCCI, J., dissenting: I disagree with the majority that there was ample competent evidence to support the trial court's finding that the victim-witness was unavailable. I respectfully dissent from that part of the majority opinion.

I agree with the majority that the standards of *Warren* and *Burns* are valid in determining unavailability of a witness-victim by reason of an emotional or mental condition. I disagree with the majority conclusion that F.S. was unavailable as a witness. Although the psychological trauma resulting from a crime may be sufficient to constitute unavailability due to mental illness, critical factual support for this conclusion does not exist in the present case. Although Dr. Megibow's testimony supports a finding of a probability of psychological injury to F.S. if she were to testify, the degree of anticipated injury is by no means deter-

minable with any degree of certainty. *Warren* and *Burns* indicate that the psychological trauma existing or anticipated on the part of the witness-victim must substantially exceed that experienced by all victims of violent crimes. The duration of such trauma also must be shown to be of such extent that a continuation of the trial could not be beneficial. In the present case, Dr. Megibow stated that F.S. may experience "disastrous" emotional damage by testifying at trial. However, in other portions of his testimony, Dr. Megibow compares the psychological trauma which F.S. may receive from testifying to the stress that all other victims of sexual assault experience. Moreover, there is absolutely no evidence in the record of the likely duration of F.S.'s mental condition. Dr. Megibow testified that F.S. had testified competently and consistently at the preliminary hearing, and there is no indication in the record as to the time at which the potential for psychological harm to F.S. from further testimony will dissipate.

The trial court's conclusion that F.S. was out of contact with reality was at variance with the evidence. Rather, Dr. Megibow testified that F.S. was often fully knowledgeable of the difference between reality and fantasy. There were occasions in which it was "more difficult for her" to maintain her contact with reality, but "more often than not" she was in contact with reality and Dr. Megibow had never seen her "in a state where she has totally lost contact with reality." Dr. Megibow also testified that F.S. had been consistently competent and capable of recalling and reciting information in the past.

Finally, I am compelled to note that the State had two other alternatives available to it. First, pursuant to K.S.A. 1987 Supp. 60-460(c)(2), F.S.'s testimony at the preliminary hearing could have been used at the trial. *State v. Mick*, 229 Kan. 157, 621 P.2d 1006 (1981). A finding of unavailability would still be required, but the defendant's right to confront his accuser is not violated. The other alternative would be to videotape her testimony pursuant to K.S.A. 1987 Supp. 22-3434. *State v. Johnson*, 240 Kan. 326, 729 P.2d 1169 (1986). The State's reason for not utilizing the former alternative was stated by counsel for the State at oral argument as not wanting certain parts of F.S.'s preliminary hearing cross-examination testimony admitted into evidence at

the trial. No reason was given for not utilizing the latter alternative, except that counsel felt F.S.'s hearsay testimony was admissible pursuant to K.S.A. 1987 Supp. 60-460(dd).

K.S.A. 1987 Supp. 22-3434 provides, in part:

"**Videotape of testimony of child victim admissible in certain cases; limitations; objections, restrictions.** (a) On motion of the attorney for any party to a criminal proceeding in which a child less than 13 years of age is alleged to be a victim of the crime, the court may order that the testimony of the child be taken:

"(1) . . . by closed-circuit equipment [or

"(2) by audio and video recording.]

"(b) At the taking of testimony under this section:

"(1) Only the attorneys for the defendant, the state and the child, any person whose presence would contribute to the welfare and well-being of the child and persons necessary to operate the recording or closed-circuit equipment may be present in the room with the child during the child's testimony;

"(2) only the attorneys may question the child;

"(3) the persons operating the recording or closed-circuit equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during the child's testimony but does not permit the child to see or hear them; and

"(4) the court shall permit the defendant to observe and hear the testimony of the child in person, but shall ensure that the child cannot hear or see the defendant.

"(c) If the testimony of a child is taken as provided by this section, the child shall not be compelled to testify in court during the proceeding."

I am not suggesting that the admissibility of the out-of-court statements of F.S. should be dependent upon which statutory method the State happens to choose. Nor do I imply that the admissibility of such hearsay testimony is dependent upon the State's exhausting all such alternatives. However, our rules of evidence express a preference for live testimony in court, and the use of K.S.A. 1987 Supp. 22-3434 is the best alternative to live testimony. In the present case, the issue is not just one of admissibility of hearsay evidence. Also at issue is the defendant's constitutional right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Kansas Constitution. In *State v. Myatt*, 237 Kan. 17, 697 P.2d 836 (1985), we held out-of-court statements do not violate a defendant's constitutional right to confrontation if the witness is unavailable and the statements have an "adequate indicia of reliability." 237 Kan. at 24. By videotaping F.S.'s testimony pursuant to K.S.A. 1987 Supp. 22-

3434, she need not be "unavailable" as a witness for her video-taped testimony to be admissible, and the right of confrontation is preserved. It does not take any extraordinary degree of intelligence to conclude that the primary, if not the sole, purpose of K.S.A. 1987 Supp. 22-3434 is to substantially reduce, if not remove, the stress to a child-victim, such as F.S., in testifying in a case such as the present one while, at the same time, preserving the defendant's right to cross-examination. There is nothing in the record to support a finding that F.S. could not have testified by videotape as provided in K.S.A. 1987 Supp. 22-3434. To the contrary, Dr. Megibow testified that F.S. could not handle the stress of testifying in court, and that her adverse reaction to testifying at the preliminary hearing was triggered by stress. The State's failure to videotape F.S.'s testimony is not critical to the admissibility of her statements, but it is a factor to be considered in determining if F.S. was, in fact, unavailable as a witness. The right to confront one's accuser is a fundamental constitutional right. The burden of proving the unavailability of the victim as a witness rests upon the State. In my opinion, the State failed to meet that burden. I would reverse the trial court on this issue, and remand to the district court for a new trial.