No. 66,656

STATE OF KANSAS, *Appellee*, v. NANCY BRATT and DENNIS BRATT, *Appellants*.

(824 P.2d 983)

Opinion filed January 17, 1992.

*David P. Troup,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the brief for appellants.

*Thomas P. Alongi,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Nancy Bratt appeals her conviction of two counts of aggravated intimidation of a witness or victim under 18 years of age, K.S.A. 21-3833(d). Dennis Bratt appeals his convictions of two counts of indecent liberties with a child, K.S.A. 1990 Supp. 21-3503(1)(b). Each defendant claims the trial judge improperly (1) admitted hearsay statements of the child-victim witness in violation of the Confrontation Clause of the Sixth Amendment and § 10 of the Kansas Bill of Rights; (2) permitted testimony concerning the child's actions and statements by use of anatomical dolls; (3) excluded expert testimony concerning the unreliability of testimony based on use of anatomical dolls and the suggestibility of children when interviewed by adult interrogators concerning alleged sexual abuse; (4) prevented defendants from reading to the jury the transcript of the child's statement given at the second K.S.A. 1990 Supp. 60-460(dd) hear-

ing; (5) excluded and/or adversely commented on defendants' proffered evidence from lay witnesses; and (6) consolidated defendants' cases for trial contrary to K.S.A. 22-3202(3). Defendants further claim there was insufficient evidence to convict either defendant.

Defendants Dennis and Nancy Bratt are the parents of R.B., the child-victim witness.

On September 9, 1990, R.B., the Bratts' five-year-old son, was playing with M.D., the seven-year-old son of C.D., a neighbor of the Bratts. C.D. walked into her bedroom where the two were playing and saw R.B. straddling M.D.'s stomach. They were hugging and kissing. C.D. asked R.B. what they were doing. R.B. said they were playing games. When C.D. asked R.B. what kind of games, he said "sex games." When she asked him who else he played sex games with, R.B. named a boy who lived across the street, "Big Robert." She then asked if R.B. also played sex games with his father. R.B. said yes.

C.D. reported her conversation with R.B. to Officer Tony Barnes of the Junction City Police Department. Officer Barnes went to the Bratt home and took R.B. into protective custody. Officer Barnes interviewed R.B. in private, using four drawings of nude white males of various ages. He asked R.B. to select a drawing that represented R.B. and one that represented his father. R.B. picked the white grammar-school-age male to represent himself and the white teenage male to represent his 40-year-old father. Barnes told R.B. he wanted him to put an "X" where his father had touched him. At first, R.B. made one "X" on the paper between the depictions of the front view and back view of the white grammar-school-age male. Officer Barnes then asked R.B. to make an "X" on the picture of the body where his father had actually touched him and make an "X" on the other picture where he had touched his father. R.B. subsequently made several "X's" on each drawing, including directly on the genitals of the drawing of the white grammar-school-age male and the drawing representing his father. In response to Officer Barnes' questions, R.B. indicated that he and his father wore their clothes when they played the games but sometimes his father would take out his penis and let R.B. play with it. Officer Barnes said that R.B. used the word "penis." After Officer Barnes concluded his in-

terview, the matter was turned over to a juvenile officer, Robert Grant.

On September 10, 1990, Officer Grant and SRS Social Worker Veronica Camp jointly interviewed Robert. Because R.B. was uncommunicative, he was given clothed anatomically correct dolls and asked to select a doll representing everyone involved in the sex games. Camp testified at trial that R.B. selected a black male child to represent Big Robert, a white male child to represent himself, and a white adult male to represent his father but that R.B. was unable to find a doll to represent M.D., because he had selected the only white male child doll to represent himself. Camp testified that R.B., without prompting, immediately removed the clothes from the dolls representing himself and his father and placed them face-to-face in a sexual position.

Officer Grant testified that R.B. selected two dolls, one to represent himself and one to represent his father.. Grant also testified that he told R.B. it was okay if he wanted to remove the dolls' clothes.

During the interview, R.B. used the dolls to describe various forms of sexual contact with his father. After the interview, R.B. was taken to the Geary County Community Hospital emergency room and examined for possible sexual assault. No physical evidence of trauma was found.

R.B. was sent for therapy with Lamar Roth, a master's level psychologist. Roth testified at trial that he had been provided with little information about the specifics of R.B.'s case. Roth testified that when he presented R.B. with anatomical dolls, R.B. immediately disrobed them. Roth admitted that he was unaware that R.B. had previously been exposed to the use of anatomical dolls. At one point, Roth observed R.B. place the boy doll and the mother doll in various sexual positions. This caused Roth to suggest to Camp the possibility of sexual activity between R.B. and his mother. Camp and Grant reinterviewed R.B., again using the anatomical dolls. This time, using the adult female doll and the boy doll, R.B. indicated sexual contact with his mother.

Prior to a temporary custody hearing on September 11, 1990, Camp overheard Nancy Bratt talking to R.B. outside the courtroom. At trial, Camp testified Nancy "told [R.B.] not to say anything, to shut up and not to talk, not to say anything." Camp

neither reported this statement to the court at that time, nor did she make a report about this incident in her SRS case activity log until some time later. Camp also testified at trial that, on September 26, 1990, R.B. told her during one of the visitations at her office that his mother took him aside and, "asked him had he told, had he talked. [R.B.] said he told his mom no. And [R.B.] said the mom told him not to talk, not to tell anybody." Again, Camp failed to report the conversation or include this conversation in her log for several weeks. Camp also testified that R.B. informed her, at a later date, that his mother had directed him "not to talk, not to tell anybody what's going on in their home," and "not to talk to the judge, not to talk to the police, not to talk with [Camp]."

R.B. did not testify during his parents' trial. The trial judge admitted his statements, given to the other State's witnesses, under K.S.A. 1990 Supp. 60-460(dd). Dennis Bratt was convicted of two counts of indecent liberties with a child. Nancy Bratt was convicted of two counts of aggravated intimidation of a witness, but acquitted of a charge of indecent liberties with a child. Dennis Bratt was sentenced to concurrent terms of 4 to 15 years. Nancy Bratt was sentenced to maximum consecutive terms for the two Class E felonies. Both defendants appealed.

Defendants first claim the trial court improperly admitted R.B.'s hearsay statements under K.S.A. 1990 Supp. 60-460(dd) in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution and § 10 of the Kansas Bill of Rights. Defendants assert that all testimony relating to what R.B. said to C.D., Officers Barnes and Grant, SRS worker Veronica Camp, foster parent Eula Wright, and psychologist Lamar Roth was inadmissible as violative of the Confrontation Clause.

K.S.A. 1990 Supp. 60-460(dd) provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

"(dd) *Actions involving children.* In a criminal proceeding . . . a statement made by a child, to prove the crime . . . if:

"(1) The child is alleged to be a victim of the crime . . . ; and

"(2) the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable

and the child was not induced to make the statement falsely by use of threats or promises.

"If a statement is admitted pursuant to this subsection in a trial to a jury, the trial judge shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, any possible threats or promises that might have been made to the child to obtain the statement and any other relevant factor."

There were two K.S.A. 1990 Supp. 60-460(dd) hearings prior to the Bratts' trial. The first hearing was before a district magistrate judge just prior to the preliminary examination. The district magistrate judge determined R.B. was not unavailable. R.B. then testified at the preliminary examination.

The second hearing was held by the district judge pursuant to the State's second motion to admit the child's statements under K.S.A. 1990 Supp. 60-460(dd). After reading the transcript of the preliminary examination and hearing witnesses testify as to what R.B. had told them, the district judge determined that R.B. "in the presence of the Court, the formality of the courtroom, and the presence of the parents was unable to understand the questioning, the importance of the proceedings, and application of an oath, or the relevancy of an oath," and thus he was unavailable as a witness. With regard to R.B.'s out-of-court statements, the district judge found they were apparently reliable, were not induced or made falsely by the use of threats or promises, and were admissible at trial as an exception to the hearsay rule under K.S.A. 1990 Supp. 60-460(dd). R.B.'s hearsay statements were introduced during the jury trial through the testimony of various witnesses.

Defendants allege the district judge failed to consider *Idaho v. Wright*, 497 U.S. ___, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990), when he ruled the hearsay statements admissible, although a copy of the *Wright* decision was given to the district judge during the second 60-460(dd) hearing. Defendants assert the holding of the United States Supreme Court in *Wright* controls the admission of child victim hearsay and that the admission of hearsay statements attributed to R.B. violated the rules of the *Wright* case and thus the Confrontation Clause of the Sixth Amendment.

In *Wright*, the United States Supreme Court considered whether the admission at trial of hearsay statements made by a child to an examining pediatrician violated a defendant's rights under the Confrontation Clause of the Sixth Amendment. The trial court had found the child declarant was not capable of communicating to the jury and allowed admission of her statements to a pediatrician alleging sexual abuse under Idaho's residual hearsay exception. The Supreme Court of Idaho found the hearsay testimony violated the federal constitutional right to confrontation because (1) the testimony did not fall within a traditional hearsay exception and was based on an interview that lacked procedural safeguards, and (2) a younger daughter's statement lacked sufficient particularized guarantees of trustworthiness and the admission of that statement was not harmless. The Idaho Supreme Court reversed the conviction and remanded the case for a new trial. The United States Supreme Court granted the State's Petition for *certiorari*.

On review, the United States Supreme Court noted the Confrontation Clause bars admission of evidence that would otherwise be admissible under an exception to the hearsay rule. It cited *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 107 S. Ct. 2531 (1980), for determining when incriminating statements admissible under the hearsay rule met the requirements of the Confrontation Clause. *Roberts* noted the Confrontation Clause operates in two ways when determining the admissibility of hearsay statements. First, the Sixth Amendment establishes a rule of necessity. In the usual case, the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. Second, once a witness is shown to be unavailable, the witness' statement is admissible only if it bears adequate indicia of reliability. 448 U.S. at 65. Reliability can be inferred where the evidence falls within a firmly rooted hearsay exception. If the evidence does not fall within a firmly rooted hearsay exception, the evidence must be excluded absent a showing of particularized guarantees of trustworthiness. 448 U.S. at 66.

Applying *Roberts* to the facts of *Wright*, the Court, in a 5-4 decision, stated the question was whether the State, as the proponent of evidence presumptively barred by the hearsay rule and

the Confrontation Clause, had carried its burden of proving that the child's statements to the pediatrician bore sufficient indicia of reliability to withstand scrutiny under the Confrontation Clause. It noted Idaho's residual hearsay exception was not a firmly rooted hearsay exception for Confrontation Clause purposes. Thus, the State was required to show particularized guarantees of trustworthiness of the statements. 111 L. Ed. 2d at 652-53.

The *Wright* Court stated that particularized guarantees of trustworthiness required for admission of a hearsay statement under the Confrontation Clause must be shown from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. 111 L. Ed. 2d at 655. Because evidence possessing particularized guarantees of trustworthiness must be at least as reliable as evidence admitted under a firmly rooted hearsay exception, evidence admitted under the former requirement must similarly be so trustworthy that adversarial testing would add little to its reliability. 111 L. Ed. 2d at 656. The Court observed that unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement. 111 L. Ed. 2d at 656.

The Court pointed out there are a number of factors that properly relate to whether hearsay statements made by a child witness in a child sexual abuse case are reliable, *e.g.*, spontaneity and consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. These factors also apply to whether such statements bear particularized guarantees of trustworthiness under the Confrontation Clause. This list is not exclusive. The Court concluded the unifying principle is that these factors relate to whether a child declarant was particularly likely to be telling the truth when the statement was made. 111 L. Ed. 2d at 656.

Although the Bratts' trial was two years after our decision in *State v. Kuone*, 243 Kan. 218, 757 P.2d 289 (1988), neither party cited that case, nor did the trial judge consider the factors required by *Kuone* when determining if the child's statements were

admissible under 60-460(dd). In *Kuone*, the defendant was convicted by jury trial of indecent liberties with a child and aggravated criminal sodomy. The main evidence against the defendant at trial was hearsay statements made by the alleged victim, F.S., an eleven-year-old mildly retarded child, who functioned at the late first grade to early third grade level. The trial court determined that the child's hearsay statements were admissible under 60-460(dd). On appeal, Kuone contended that the district court erred in ruling that out-of-court statements made by the alleged victim were admissible pursuant to 60-460(dd) in that (1) the victim was not "unavailable" to testify and (2) there were not "adequate indicia of reliability" surrounding her out-of-court statements.

The out-of-court statements made by F.S. to her special education teacher, her mother, and an investigating police officer, as well as her testimony given at the preliminary examination, were entirely consistent. The State argued that F.S. was unavailable to testify as a witness within the meaning of 60-460(dd)(2). The trial court agreed with the prosecution and stated that F.S. was unavailable because of the potential harm to F.S. if she were to testify at trial (a doctor had testified that the trauma of testifying during the preliminary examination had caused F.S. to have a breakdown), because F.S. was incompetent as a witness and was "out of contact with reality." 243 Kan. at 222.

We determined "unavailable as a witness" as used in 60-460(dd) also includes situations where a witness is unable to be present or to testify at a hearing because of death or then-existing physical or mental illness. We concluded the following factors are relevant to the determination of whether a victim witness is unavailable because of psychological trauma or disability: (1) the probability of psychological injury as a result of testifying, (2) the degree of anticipated injury, (3) the duration of the injury, and (4) whether the expected psychological injury is substantially greater than the reaction of the average victim of rape, kidnapping, or other violent act. Other factors may also be relevant. 243 Kan. 218, Syl. ¶ 2. We concluded that there was ample competent evidence to support the finding of the trial court that the child witness was unavailable and we affirmed Kuone's convictions.

Here, the district judge was apparently unaware of our decision in *Kuone* and failed to determine if the hearsay statement of the child had the particularized guarantees of trustworthiness as required by *Wright* to justify the exception to the general rule prohibiting the admission at trial of hearsay statements. The district judge merely determined pursuant to 60-460(dd) that R.B. was disqualified and unavailable to testify as a witness against the Bratts and that R.B.'s statements were apparently reliable and he was not induced to make the statement falsely by use of threats or promises; therefore, the statements were admissible as a hearsay exception. Under these circumstances, the hearsay statements of the child were inadmissible under the Confrontation Clause and the Bratts' convictions must be reversed.

Defendants next contend the trial court improperly permitted testimony of the child's actions and statements with the anatomical dolls. The defendants contend R.B.'s actions and conduct with the dolls is communicative in nature and constituted hearsay under K.S.A. 60-459(a). Defendants argue that because R.B.'s actions and conduct with anatomical dolls was hearsay, that hearsay was subject to the same presumption of unreliability as the child's statements made to others and admitted under K.S.A. 1990 Supp. 60-460(dd) and should be admitted only if the State establishes that the conduct with the dolls is particularly trustworthy.

K.S.A. 60-459(a) provides:

"**Definitions.** As used in K.S.A. 60-460, its exceptions and in this section: (a) 'Statement' means not only an oral or written expression but also nonverbal conduct of a person intended by him or her as a substitute for words in expressing the matter stated."

We note throughout the discussion of the issues related to use of anatomical dolls by R.B. defendants equate "play" with anatomical dolls to "use" of anatomical dolls to explain or describe an act or event that occurred. Here, the anatomically correct dolls were used to assist R.B. in explaining what he said were "sex games." Under the facts, R.B.'s use of anatomically correct dolls was hearsay. The trial court failed to make the particularized findings required by the Confrontation Clause of the Sixth Amendment as set out in *Kuone* and *Wright* for admission of hearsay under K.S.A. 1990 Supp. 60-460(dd).

Defendants next contend the trial court improperly consolidated defendants' cases for trial contrary to K.S.A. 22-3202(3). A defendant in a criminal trial is entitled to have his or her case decided on it own merits, *i.e.*, to have guilt or a finding of not guilty judged solely on the basis of the evidence properly admissible as to each defendant. When two or more defendants are tried together, there is the danger that the jury may be unable to treat separately the evidence introduced during the trial as to each defendant.

Defendants were originally charged in separate complaints/informations. The district judge initially denied the State's motion to consolidate based upon his pretrial ruling that the State could introduce evidence of Dennis Bratt's prior conviction for sexual battery under K.S.A. 60-455. Later, the judge reversed his decision to admit the evidence and consolidated the cases for trial. Both defendants objected, contending that consolidation under K.S.A. 22-3202(3) was not proper. K.S.A. 22-3202(3) states:

"Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

The State contends the evidence against each parent was virtually identical, the facts clearly depict a common scheme to sexually abuse R.B., and the "sex games" occurred in the family home. It claims the collateral evidence of R.B.'s intimidation by his mother proved material in demonstrating to the jury that Dennis Bratt was more likely to be culpable for the sex offenses given his wife's assiduous efforts to silence their child. The State concludes joinder was proper and that there was no prejudice to either defendant by joinder.

Defendants argue the State could not allege in the complaints against the Bratts that the defendants acted in concert as part of a common scheme or that the acts were so closely connected in time, place, and occasion that proof of one charge would require proof of the others. Defendants assert the charges of aggravated intimidation of a witness against Nancy Bratt are separate, distinct, and independent allegations and proof of those charges was

different than the proof required for the indecent liberties charges. Finally, Dennis Bratt contends that he was prejudiced by the joinder when evidence of the charge of aggravated intimidation of a witness against Nancy Bratt was admitted in the consolidated trial. Dennis Bratt points out there was no allegation by the State in the complaint or evidence introduced during the trial that he was aware of Nancy's alleged admonitions to R.B. Dennis Bratt concluded that, although evidence of those incidents was inadmissible as against him, in a joint trial, he could not keep that evidence from the jury.

In *State v. Roberts,* 223 Kan. 49, 574 P.2d 164 (1977), Charles D. Roberts, Robert Crittenden, James E. Smith, and Robert L. Taylor were jointly charged in an information with various crimes arising from two separate incidents. Roberts, Crittenden, Smith, and Taylor were charged with aggravated robbery and conspiracy to commit aggravated robbery in connection with the robbery of an individual named Fletcher. Roberts was also charged with aggravated burglary and misdemeanor theft of the pistol in connection with the Fletcher robbery. In addition, Crittenden and Taylor were charged with aggravated robbery of the Wishing Well bar. After the preliminary hearing, counsel for Roberts and Smith moved for separate trials, claiming the State's evidence as to the Wishing Well incident was wholly unrelated to the crimes with which they were charged.

In *Roberts* we noted that K.S.A. 22-3202(3) provides two or more defendants may be joined and tried together (1) when each of the defendants is charged with accountability for each offense included, or (2) when each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy, or (3) when in the absence of a conspiracy it is alleged the several offenses charged were part of a common scheme or were so closely connected in time, place, and occasion that proof of one charge would require proof of the others. 223 Kan. at 55.

The *Roberts* court concluded if two or more defendants have been tried together and none of the requirements of K.S.A. 22-3202(3) have been met, a misjoinder results and is an absolute ground for reversal and separate trials. 223 Kan. at 55.

Joinder was not proper in this case. It was not, and could not be, alleged by the State that the several separate offenses charged against each of the defendants were part of a common scheme or were so closely connected in time, place, and occasion that proof of one charge would require proof of the others.

We have examined the other claims raised by the defendants which relate to introduction of evidence or refusal of the trial judge to admit evidence and find the trial judge did not abuse his discretion.

The judgment of the district court is reversed, and the matter is remanded for new and separate trials of the defendants.