(954 P.2d 1)
No. 76,059

STATE OF KANSAS, *Appellee*, v. WILLIAM L. TODD, *Appellant*.

Opinion filed February 6, 1998.

*Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before RULON, P.J., LEWIS and PIERRON, JJ.

PIERRON, J.: William L. Todd, defendant, appeals his conviction of one count of aggravated battery, K.S.A. 21-3414(a)(1)(C), a level 7 person felony. The victim in this case was Linda Todd, defendant's wife. Defendant argues the trial court erred in admitting the testimony of certain witnesses who testified Linda had told them he had hit her on the head with a pipe. He argues this testimony was inadmissible hearsay.

The particular testimony in this case is very important.

Defendant and Linda had spent the day drinking at various clubs in Wichita and eventually returned to the machine shop they owned, where they got into an argument. Linda was subsequently treated at St. Joseph's Hospital for a gash on her head and a broken jaw. She had numerous other bruises.

Shortly after police interviewed Linda at the hospital, defendant was arrested. He was intoxicated. He denied any assault, but police noticed blood on his pants and scratches on his cheek, neck, and chest. During questioning and at trial, defendant denied beating

Linda. He claimed she had been drunk and had fallen and hurt herself.

At trial, the State called Albert Moore, who lived next door to the Todds' machine shop. Moore testified that on the evening in question, he was preparing to go to bed when he heard a woman scream. He went outside and saw defendant standing over a woman lying on the ground. Moore saw defendant kick the woman and hit her with something shaped like a stick or a garden hose. The weapon appeared to be 1 ½ inches around and 2 feet long. He heard the woman plead not to be hit anymore, but defendant struck her two more times and called her names. Eventually, defendant pulled the woman to her feet and they went into the machine shop. Moore could not identify the woman, but assumed it was Linda. He did not call the police or otherwise intervene.

Moore also testified that several months later he received a letter from Linda. The letter stated she had merely fallen down and hurt herself that night and that Moore should keep his nose out of the Todds' business.

Next, the State called Shelly Gelmers, another neighbor of the machine shop. Gelmers testified that on the same night, her husband had brought Linda into their house. He told Shelly he had investigated a commotion outside and found Linda in a nearby ditch. Her head was bloody, her eyes were swollen, and she was holding her jaw. Gelmers testified Linda said she and defendant had been in a fight and he had hit her on the head with a steel pipe. Gelmers said Linda was shaky and could not keep her balance. With Gelmers' help, Linda called her parents and they picked her up and took her to the hospital.

The State then called deputy Brenda Dietzman of the Sedgwick County sheriff's department. Dietzman testified that when she met Linda at the hospital, Linda had a gash on her head and a gash on her cheek. Linda told Dietzman she had been in a fight with defendant and he had hit her. Linda stated that when she tried to leave, defendant chased her and hit her with a pipe, causing her injuries. He then took her back into the shop, but she was able to sneak out the back. She ran toward a neighbor's house, but defendant caught her, threw her into a ditch, and began beating her

again. Linda told Dietzman she began screaming and a neighbor intervened and got her out of the ditch.

Dietzman also testified Linda at first indicated she did not want to press charges because she was afraid of the defendant's family.

Dr. Selberg, the emergency room physician at the hospital, testified Linda told him she had been hit across the jaw and head with a pipe. He said the nurse's report stated the injuries were the result of domestic violence. He testified that Linda had a broken jaw in addition to the gash on her head. The injury to her jaw was consistent with being hit by a pipe. Dr. Selberg testified it was unlikely a fall could have caused these injuries.

Dr. Nelson, an oral surgeon, testified he saw Linda the next day and she told him she had been struck with a pipe by defendant. Her injuries were consistent with her version of what had happened.

Linda testified she remembered drinking at the bars on that afternoon but did not remember how she received her injuries. She did not remember going to the neighbors' house or making a statement to Dietzman. Neither did she remember what she had said to the doctors and nurses who treated her. However, she did admit to writing the letter to Moore but said it was not her idea. According to Linda, defendant had given her a draft of the letter to copy, sign, and send to Moore.

At the end of Linda's testimony, defendant moved for a mistrial on the grounds that all the prior testimony about what Linda had told various people was hearsay. Because Linda said she could not remember the events of the evening, defendant asserted he had been denied his constitutional right to confront his accuser. Linda had not testified at the preliminary hearing.

Further, defendant argued Linda's statements were unreliable because she had been under the influence of alcohol that night. Testimony indicated Linda had a blood alcohol concentration of .108 that night.

The trial court denied the motion for mistrial and found Linda was unavailable as a witness as to how she had received her injuries. It then concluded the testimony of Gelmers, Dietzman, Dr. Selberg, and Dr. Nelson fit well-established hearsay exceptions. The

court further found that Linda's out-of-court statements were sufficiently consistent to clothe them with the requisite indicia of reliability and there was no evidence she had any motive to falsify or distort the truth.

Defendant denied hitting Linda with a pipe or his fists. He claimed not to know how she received her injuries but thought the cut on her head was caused by broken glass. He admitted getting into an argument with her and that she had wanted to go to her parents. He had taken her back to the shop when she tried to leave. When she ran the second time, he followed her to the ditch where he claimed she fell in and where Mr. Gelmers intervened.

Defendant also presented the testimony of Donald Palmer. Palmer testified he and Lawrence Robertson, Sr., were going to the machine shop at around 8:00 p.m. that evening to pick up a chain saw. He testified that as they approached the shop, he noticed defendant trotting out to the front of the shop and then trying to help a woman up off the ground. Palmer saw the woman push defendant away. Palmer stated he did not see a pipe and did not see defendant hit the woman.

Robertson testified he saw defendant running after Linda, Linda falling, and defendant trying to help her up. He did not see defendant strike her and did not see a pipe. He did see defendant flip something over his shoulder which resembled a towel. He was sure the woman was Linda. Palmer and Robertson decided not to stop at the machine shop.

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay." K.S.A. 60-460.

Hearsay is generally inadmissible because it is not subject to full cross-examination. However, we recognize that some hearsay is reliable enough to be excepted from the general rule of inadmissibility. Kansas recognizes 31 exceptions, demonstrating the flexibility of our analysis on the question of its admissibility.

Of course, statements not offered to prove the truth of the matter stated, but simply to prove certain things were said, are not hearsay.

In addition to hearsay, the testimonial evidence presented by the State included direct observations of witnesses which strongly suggested defendant beat Linda in such a way as to do her serious harm. This testimony, from different sources, was cross-corroborative.

That night and the following day, Linda consistently told every neighbor, police officer, and health care professional she came in contact with that defendant had hit her with a pipe and was the perpetrator of her injuries.

The law of hearsay can be complex and may require close analysis of the individual facts for correct application. Statements may be inadmissible under one exception, but admissible under another. Defendant contends some of the testimony here was inadmissible in part because Linda was not unavailable to testify.

The unavailability of the declarant is not always required for a hearsay exception to be applied. In *White v. Illinois*, 502 U.S. 346. 354-55, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992), the United States Supreme Court held that in order to admit into evidence an excited utterance or spontaneous declaration, the prosecution did not need to establish the unavailability of the 4-year-old declarant. See *State v. Johnson-Howell*, 255 Kan. 928, 935, 881 P.2d 1288 (1994).

In *State v. Bratt*, 250 Kan. 264, 824 P.2d 983 (1992), the Kansas Supreme Court found that as a requirement to allow testimony under K.S.A. 60-460(dd), the child victim must be unavailable. However, 60-460(dd), which is not a "firmly rooted," long-established hearsay exception requires that the child be unavailable as a witness before it can be applied. We also note the main reason for the reversal in *Bratt* appears to have been the trial court's failure to determine if the hearsay statement admitted had the particularized guarantees of trustworthiness as required by *Idaho v. Wright*, 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990), and *State v. Kuone*, 243 Kan. 218, 757 P.2d 289 (1988).

In *Johnson-Howell*, Clemons and Johnson-Howell were coconspirators in a murder. Clemons had already been convicted when Johnson-Howell was tried. The State wished to introduce statements made by Clemons to investigating officers incriminating Johnson-Howell. Called as a witness, Clemons refused to testify,

and the State claimed he was unavailable and that the statements to the officers were admissible under a number of exceptions.

In an exhaustive analysis of the factual situation, the Supreme Court noted Clemons was not unavailable and the exceptions claimed by the State were not applicable. Under the facts in that case, as in *Bratt*, unavailability was a necessary predicate for at least some of the claimed exceptions. Excited utterance was not claimed in *Johnson-Howell*.

In *State v. Willey*, 18 Kan. App. 2d. 837, 838, 860 P.2d 67 (1993), this court cited *Bratt* to support the proposition that unavailability had to be shown prior to admission into evidence of an excited utterance or spontaneous declaration under 60-460(d). However, in *Willey* the facts indicated the victim was not present in court and had not been served with a subpoena; it was not mentioned whether adequate efforts had been made to obtain her presence. Therefore, the unavailability language was dependent on the particular facts, making it distinguishable from the instant case.

Here, Linda was not unavailable just because she claimed not to remember the incident. We find this case analogous to *State v. Lomax & Williams*, 227 Kan. 651, 661-62, 608 P.2d 959 (1980):

"We interpret the evidentiary record to establish a clear case where a witness simply refused to testify at the trial, using as a vehicle a claim that she could not remember what happened. This is not a case where a witness, acting in good faith, was unable to testify as to the subject matter of her prior statement because, through no fault of her own, she had lost her memory in regard to such events."

We see nothing in the present record to make a finding that this case is any different from *Lomax & Williams*. However the analysis is not over. At least some of the hearsay exceptions that might be applied do not require the declarant to be unavailable.

We first turn to whether the testimony of Gelmers concerning what was said to her by Linda was admissible under K.S.A. 60-460(d)(2).

K.S.A. 60-460(d) allows admission as an exception to the general bar to hearsay:

"A statement which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, (2) while the declarant was under the stress of a nervous excitement caused by

such perception or (3) if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

Subsection (d)(2) is the so called "excited utterance" exception.

The trial court found that Linda's statements to Gelmers were made shortly after she was injured and while she was under the stress of nervous excitement caused by what she had just been through, and the evidence supports this finding. The court also found there was no credible evidence that Linda had any reason to distort the truth. Therefore, the court rightly found the statement to be admissible under 60-460(d)(2).

Defendant argues that while Linda's statements were made shortly after the event, they lacked the requisite indicia of reliability. He points to Gelmers' testimony that indicated Linda was somewhat incoherent and unable to remember her parents' telephone number. Further, he points to the fact that Linda had testified she had been drinking and that the hospital determined her blood alcohol concentration was .108 when she was admitted.

Linda was under the influence of alcohol and was dazed by the injuries she had received, but her statements were consistent with Moore's eyewitness testimony. Also, reliability can be inferred in a case where the evidence falls within a firmly rooted hearsay exception. *Bratt*, 250 Kan. at 270. Based upon our standard of review, it cannot be said that no reasonable person would agree with the trial court's ruling. Therefore, Linda's statements to Gelmers fell within the excited utterance exception and were admissible.

The trial court admitted Linda's statements to Deputy Dietzman under K.S.A. 60-460(d)(3).

"The hearsay exception found at K.S.A. 60-460(d)(3) requires several conditions to be satisfied: (1) The declarant is unavailable as a witness; (2) the statement was made at a time when the matter was recently perceived and while the declarant's recollection was clear; and (3) the statement was made in good faith prior to the commencement of the action and with no incentive to falsify or distort." *State v. Sanders*, 258 Kan. 409, 421, 904 P.2d 951 (1995).

There was not sufficient evidence in the record to show Linda was unavailable as defined by our law on hearsay. However, the

same factors that were involved in the analysis of the Gelmers' testimony are applicable here. A little time had elapsed, but Linda may still have been under the nervous excitement of the incident. More important, the fact that her statements to Dietzman reflected the same basic facts that were stated to the Gelmers would make the admission of the Dietzman statement harmless error at worst. See *Johnson-Howell*, 255 Kan. at 945.

The same can be said of the statements to Dr. Selberg on the night in question. However, we note the court cited K.S.A. 60-460(l)(2), the statement of physical or mental condition of declarant exception, as the basis for their admission. This exception allows certain hearsay doctor-patient communications to be admitted:

"Unless the judge finds it was made in bad faith, a statement of the declarant's (1) then existing state of mind, emotion or physical sensation, including statements of intent, plan, motive, design, mental felling, pain and bodily health, but not including memory or belief to prove the fact remembered or believed, when such a mental or physical condition is an issue or is relevant to prove or explain acts or conduct of the declarant or (2) previous symptoms, pain or physical sensation, made to a physician consulted for treatment or for diagnosis with a view to treatment, and relevant to an issue of declarant's bodily condition."

Defendant argues the exception only allows in the declarant's statements of the nature or description of the symptoms and not the identity of the perpetrator.

There appear to be no Kansas cases that expressly deal with statements to a doctor as to the cause of injuries under 60-460(l)(2). However, under prior case law, it appears a physician could not testify as to what a patient told him or her in respect to the past history of the case or the cause or duration of the injury. *Cain v. Steely*, 173 Kan. 866, 870, 252 P.2d 909 (1953).

The State acknowledges the *Cain* holding but argues 60-460(l) liberalizes the rule and now allows such statements to be admitted. It cites no authority for this position.

The plain wording of the statute appears to support defendant's argument. Under the corresponding federal rule, Fed. R. Evid. 803(4), the cause or source of the symptoms or pain are expressly covered as included within the exception to the extent they are reasonably pertinent to the diagnosis or treatment. However, the

Kansas rule appears to be more narrow. One authority opines that under K.S.A. 60-460(l)(2), "[the] statement must be made to 'a physician consulted for treatment or for diagnosis with a view to treatment, and relevant to an issue of declarant's bodily condition'; statement of causation not included; trial judge may exclude statement if he finds that it was made in bad faith." Binder, Hearsay Handbook, p. 180 (3d ed. 1991).

The question of what exactly is covered by this exception is a matter of statutory interpretation. Interpretation of statutes is matter of law, and this court's scope of review is unlimited. *State v. Arculeo*, 261 Kan. 286, Syl. ¶ 1, 933 P.2d 122 (1997). "When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *State v. Lawson*, 261 Kan. 964, 966, 933 P.2d 684 (1997).

As the legislature could have drafted the Kansas exception to mirror the federal rule to include the cause of the injury or the external source of the injury or condition, the exclusion of such language arguably means the legislature meant such statements not to be included in that exception to the hearsay rule.

In the present case there was no direct testimony that the fact Linda was hit with a pipe by defendant was relevant to her diagnosis. Who causes an injury might be relevant, for instance, in a child abuse case to enable a physician to treat the patient from a mental health standpoint. However, we must find that although statements made to a physician that night about who was the perpetrator of the injury might conceivably have been relevant to treatment and admissible under K.S.A. 60-460(l), there was no attempt made to establish that here.

We find there was substantial direct evidence from the observations of Moore and Gelmers to show defendant beat Linda on the night in question. Dietzman's testimony indicated that Linda feared defendant. The treating physicians believed Linda's injuries were consistent with being struck with a pipe and not with falling down.

The statements Linda made to Gelmers that defendant had been the cause of her injuries were properly admitted as excited utterances.

The same statements to Dietzman, Dr. Selberg, and Dr. Nelson were not properly admitted under K.S.A. 60-460(d)(3) and 60-460(l). But, those statements to Dietzman and Selberg could quite possibly have been admitted as excited utterances, and all three were repetitions of what had been said to Gelmers. All of the statements were consistent with each other and the physical facts and observations properly in evidence. At worst, it was harmless error to admit the statements. See *Johnson-Howell*, 255 Kan. at 935.

"A trial court decision which reaches the right result will be upheld, even though the trial court may have relied upon the wrong ground or assigned erroneous reasons for its decision." *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 (1993).

Defendant presented an alternate scenario. The jury found it lacked plausibility.

We, therefore, find there was no reversible error in the admission of evidence and affirm the conviction.

Affirmed.