(4 P.3d 630)

No. 81,326

STATE OF KANSAS, *Appellee,* v. RICKEY B. GILES, *Appellant.*

Opinion filed April 14, 2000.

*Jennifer C. Roth*, of assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Michelle M. Sehee*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before ELLIOTT, P.J., LEWIS, J., and BUCHELE, S.J.

LEWIS, J.: Defendant Rickey B. Giles was convicted of aggravated battery of his wife and sentenced to a term of 162 months in the custody of the Secretary of Corrections. This is a direct appeal from that conviction.

The evidence introduced by the State in this case showed that on the night in question, defendant had been drinking excessively and was unhappy and angry with his wife because she failed to locate a money order he wanted. Defendant's anger led to his brutal beating of his wife. As a result of this beating, the victim suffered ruptured eardrums, a fractured wrist, several fractured ribs, a punctured lung, severe blood loss, extensive bruising, and the loss of a considerable amount of hair torn from her scalp.

After the beating, the victim called 911. She was taken to the hospital and, after being given treatment, she gave the police a statement which essentially related the facts set forth above and identified defendant as the individual who had beaten her. Several days later, she taperecorded another statement for another officer, which was consistent with the first statement given.

Despite her beating and despite the statements she gave to the police, the victim refused to testify against defendant either at his preliminary hearing or at his trial. At defendant's trial, the victim refused to testify based on her Fifth Amendment rights against self-incrimination.

In the absence of any testimony by the victim, the State offered the two police statements that the victim had given shortly after the incident. These statements were admitted over defendant's ob-

jection. It is fair to say that defendant's conviction is largely based on the hearsay testimony of his wife contained in the statements given to the police officers.

Defendant argues the trial court erred in admitting the victim's out-of-court statements. It is defendant's position that the admission of hearsay testimony in this case violated his right to confront the witnesses against him. We disagree with this argument and affirm the trial court's admission of the statements into evidence.

"A trial court is given considerable latitude in determining the admissibility of a statement under K.S.A. 60-460. See *State v. Sanders*, 258 Kan. 409, 420, 904 P.2d 951 (1995). The standard of appellate review concerning the admission of hearsay evidence is abuse of trial court discretion." *State v. Ninci*, 262 Kan. 21, 50-51, 936 P.2d 1364 (1997). However, under the Sixth Amendment of the United States Constitution, a defendant enjoys a right to be confronted by witnesses against him. *State v. Sanders*, 258 Kan. 409, 417-18, 904 P.2d 951 (1995). This right, however, "does not preclude the admission of all out-of-court statements." 258 Kan. at 418.

"[C]ourts should attempt to harmonize the goal of the Confrontation Clause—placing limits on the kind of evidence that may be received against a defendant—with a societal interest in accurate factfinding, an effort which may require consideration of out-of-court statements. When the unavailability of a witness becomes an issue, whether the witness is unavailable is a question of law. To obtain admission of out-of-court statements, the State must either produce the witness or demonstrate that the witness is unavailable, and the court must find that the out-of-court statements bear sufficient indicia of reliability or show particularized guarantees of trustworthiness." 258 Kan. at 418.

"The law of hearsay can be complex and may require close analysis of the individual facts for correct application. Statements may be inadmissible under one exception, but admissible under another." *State v. Todd*, 24 Kan. App. 2d 796, Syl. ¶ 1, 954 P.2d 1, *rev. denied* 264 Kan. 824 (1998).

We have examined the record in this case in the light of our standards of review, and we conclude that the evidence complained of by defendant was admissible under one of at least two exceptions to the hearsay rule.

It is somewhat difficult to determine the trial court's exact reasoning in admitting the evidence. However, it is clear to us that the trial court, in ruling that the hearsay statements were admissible, relied at least in part on the provisions of K.S.A. 1999 Supp. 60-460(d)(3). That provision of the statute admits a hearsay statement made

"*if the declarant is unavailable as a witness*, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort." (Emphasis added.)

Our review of the record indicates that the only part of that exception which could be open to argument in this case is the requirement that the declarant be "unavailable as a witness." The trial court, in this case, held that defendant's wife was unavailable as a witness.

The essential question on appeal is whether that finding was correct. Defendant's wife, in response to a question at trial, answered, "I refuse to answer any questions so I don't incriminate myself." The trial court gave both attorneys an opportunity to inquire of the witness as to her claim of privilege, and she reiterated her reliance on her Fifth Amendment rights on several occasions. It is true that at one point she testified she could not remember what had happened and could not remember making the statements in question to the police. However, essentially, she relied on her Fifth Amendment rights in refusing to testify.

Under K.S.A. 60-459(g)(1), a declarant is unavailable as a witness if he or she is exempted on the ground of privilege in testifying. In this state, the law is clear that a witness who invokes his or her Fifth Amendment privileges in refusing to testify is "unavailable" under 60-459(g)(1). *State v. Bird*, 238 Kan. 160, 174, 708 P.2d 946 (1985); *State v. Oliphant*, 210 Kan. 451, 453-54, 502 P.2d 626 (1972). It is apparent, therefore, at least on the surface, that the victim in this case, in refusing to testify on the basis of her Fifth Amendment privilege, was unavailable as a witness.

Defendant argues the trial court erred in finding that the witness was unavailable because the Fifth Amendment privilege against

self-incrimination was not available to her in this case. The problem with defendant's argument in that regard is that he did not challenge the victim's assertion of her Fifth Amendment rights at the time of trial. Defendant offered no evidence and no argument which would indicate to us that the witness' claim of privilege was invalid or wrongful. The trial court gave the attorneys for both sides an opportunity to inquire as to the reasons the witness refused to testify. The attorneys did so, but at no time did they inquire why the witness believed she had the right to refuse to testify under the Fifth Amendment. We note that in addition to the opportunity to question the witness as to her claim of privilege, defendant had every right to ask the court to hold the witness in contempt if she continued to refuse to testify on the basis of her Fifth Amendment rights. Defendant made no motion, either orally or in writing, asking the court to determine that the witness' claim of privilege was bogus and asking the court to require the witness to testify under penalty of contempt. Defendant had numerous opportunities to raise these issues, and he failed to do so.

At this point, we do not have the ability to engage in speculation as to whether the witness had a valid basis for claiming the privilege. Our reading of the record indicates the trial court implicitly, if not explicitly, recognized the claim of privilege on the part of the victim by finding she was "unavailable." In the absence of any challenge to that claim or any indication that the claim was bogus, we can only assume that the trial court was correct in finding the witness "unavailable" and that the witness had every right to claim her Fifth Amendment privileges. An appellant "has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper." *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997).

The record in this case does not show that the witness had no right to claim her Fifth Amendment privilege and it does not affirmatively show that the trial court erred in finding her unavailable. Under those circumstances, the law of this state requires that we presume the action of the trial court was proper, and we do so and affirm the trial court's findings that the witness was unavailable

by virtue of claiming her Fifth Amendment right against self-incrimination.

Defendant relied on *State v. Johnson-Howell*, 255 Kan. 928, 940, 881 P.2d 1288 (1994), and *State v. Lomax & Williams*, 227 Kan. 651, 608 P.2d 959 (1980), to support his argument that the witness was not unavailable.

In *Lomax & Williams*, the witness testified she could not remember anything. At no time did the witness in *Lomax & Williams* claim a statutory privilege and, as a result, that decision has little application to this case.

In *Johnson-Howell*, the record showed the witness did not have the protection of the Fifth Amendment because he had already been convicted, sentenced, and had an appeal resolved against him. In fact, the witness who was the subject of the discussion in that case chose not to testify even after being ordered to do so by the trial court and even after being threatened with being found in contempt. The Supreme Court in *Johnson-Howell* quite correctly points out that based on the record of the case, the witness had absolutely no right to claim a Fifth Amendment privilege and was not, therefore, "unavailable" under the hearsay exception.

We agree with *Johnson-Howell*, but it does not control here. Our recitation in this opinion clearly demonstrates the difference between the record in *Johnson-Howell* and the record in the instant matter.

We also conclude that the statement given by the witness shortly after she had received treatment for injuries was admissible under K.S.A. 1999 Supp. 60-460(d). That provision of the statute provides that as an exception to the hearsay rule, a statement is admissible if it is one "which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, (2) while the declarant was under the stress of a nervous excitement caused by such perception." Subsection (d)(2) is the so-called "excited utterance" exception.

The trial court found that the first statement of the victim given to Officer William Perkins was made immediately following the incident. The record supports this finding as well as the conclusion that the statement was made "while the declarant was under the

stress of a nervous excitement caused by such perception," as provided for by the statute cited above. The record indicates that Officer Perkins testified he arrived on the scene just before the emergency medical technicians and that he followed the victim's ambulance to the hospital and interviewed her after she was treated in the emergency room. We hold the victim's statements to Officer Perkins fall under the excited utterance exception and were admissible under that exception. The fact that the trial court may not have based its decision on this rationale is not pertinent. " 'A trial court's decision which reaches the right result will be upheld, even though the trial court may have relied upon the wrong ground or assigned erroneous reasons for its decision.' " *Todd*, 24 Kan. App. 2d at 805 (quoting *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 [1993]).

There was a second statement admitted at trial, which was given to Detective Chris Moore approximately 2 days after the victim was beaten. It is difficult to construe that statement as falling under the excited utterance rule. We conclude the statement to Detective Moore is not admissible under the excited utterance exception because of the requirement that the statement be made while the declarant was under the stress of the perception. That requirement was not satisfied.

Even though we conclude the trial court erred in admitting the statement given to Detective Moore, we conclude the error was not reversible. "When reviewing the erroneous admission or exclusion of evidence, the error is harmless if no substantial right of the defendant is involved." *Sanders*, 258 Kan. at 418. The statement given to Detective Moore was basically the same as the statement given to Officer Perkins, which was properly admitted. The physical facts and observations properly in evidence were consistent with both statements. The statement given to Detective Moore was simply cumulative to the statement given to Officer Perkins. Under the circumstances, we hold the admission of the statement given to Detective Moore was harmless error and does not require a reversal of defendant's conviction.

During the direct testimony of Detective Moore, the witness was permitted to testify that in his opinion the victim in this case was

telling the truth when she gave him a taperecorded statement approximately 2 days after the incident. Defendant argues it was error to permit the witness to testify as to his opinion of the victim's truthfulness and that this requires a reversal of defendant's conviction.

The admission of evidence lies within the sound discretion of the trial court. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

It is clear in this state that a witness may not express an opinion which would pass upon the credibility of another witness or upon the weight of disputed evidence. See *State v. Mullins*, 267 Kan. 84, 94-96, 977 P.2d 931 (1999).

As we read the record, Detective Moore was permitted to express his opinion on the credibility of the statement given by the victim, and this was error.

The State argues that the opinion of Detective Moore became permissible because defendant opened the door to this question during cross-examination. We do not agree. General impeachment questions do not open the door to questions permitting a witness to pass upon the credibility of another witness. See *Mullins*, 267 Kan. at 94-96; *State v. Jackson*, 239 Kan. 463, 470, 721 P.2d 232 (1986); *State v. Lash*, 237 Kan. 384, 385, 699 P.2d 49 (1985).

We conclude it was error to permit Detective Moore to express an opinion as to the credibility of the witness. It remains to be determined whether that error requires that we reverse defendant's conviction. Once again, we focus on the harmless error rule. In *Sanders*, 258 Kan. at 418, Justice Lockett said:

"The admission or exclusion of relevant evidence in a criminal case is governed by . . . the harmless error rule . . . . K.S.A. 60-261 sets out the harmless error rule. Error in the admission or exclusion of evidence by the court is not grounds for granting a new trial or setting aside a verdict unless refusal to take such action appears to the court inconsistent with substantial justice. At every stage of the proceeding, the court must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. When reviewing the erroneous admission or exclusion of evidence, the error is harmless if no substantial right of the defendant is involved."

In this case, the victim gave a statement shortly after being treated for serious injuries, indicating that defendant inflicted

those injuries. The physical facts of this case, the observations properly in evidence, and the consistency of the evidence indicates there is little doubt that the victim was beaten by defendant. We conclude that under the circumstances, the expression of opinion by Detective Moore was error but it was harmless error. Our conclusion is similar to that of the Supreme Court in *Mullins*, 267 Kan. at 97, wherein the court found that "it [was] difficult to see how the answer to [a] single question examined in the light of all of the testimony and evidence introduced through 12 witnesses would constitute reversible error." The Supreme Court held, as do we, that the trial court's error in allowing one answer did not cause prejudice to defendant's substantial rights so as to be inconsistent with substantial justice.

Defendant next argues that prosecutorial misconduct requires a reversal of his conviction. We do not agree.

Reversible error normally cannot be found upon a complaint of misconduct by the prosecutor during closing argument if no contemporaneous objection was made to the offending statement. *Lumley*, 266 Kan. at 964-65. In this case, there was no contemporaneous objection to the complained-of comments by the prosecutor. Under the circumstances, we would find reversible error in the comments only when the statements rise to the level of violating a defendant's right to a fair trial and deny a defendant his or her Fourteenth Amendment right to due process. If that were true, we would find reversible error even in the absence of a contemporaneous objection.

We have examined the complained-of remarks by the prosecutor in this case and find that they do not amount to prosecutorial misconduct and do not require a reversal of defendant's conviction. We conclude the complained-of remarks did not exceed "fair argument." See *State v. Bilby*, 194 Kan. 600, 603, 400 P.2d 1015 (1965).

We hold the comments made by the prosecutor in closing argument were not so prejudicial as to require a reversal of defendant's conviction.

Defendant next argues that instruction No. 2 given by the trial court impermissibly shifted the State's burden of proof. That instruction reads as follows:

"A juror is an officer of the Court and it is the duty of the jury to work out justice for the parties within the law and the evidence.

"In your deliberations, you should lay aside mere pride of opinion, and should bear in mind that the jury room is no place for espousing and maintaining an advocacy of either side of the case. The aim to be kept in view by the jury is the truth as you find it to be from the evidence, considered with the instructions of the Court.

"It is the duty of the jury to consider the evidence and instructions together, and to listen to the arguments of each other with an open-mindedness and a disposition to be convinced by them. If at any time after such consideration of the evidence and the instructions, a juror is convicted that his or her vote is wrong, it then becomes the duty of such juror to change his or her vote."

There was no objection by defendant to the instructions given by the trial court. Under these circumstances, we would only reverse if the instructions as given were "clearly erroneous." An instruction is clearly erroneous only if we conclude there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. See *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

In the final analysis, we hold defendant's objection to the instruction in question is without merit. There are at least four appellate decisions approving instructions containing language similar to instruction No. 2 in this case, if not exactly like that instruction. See *State v. Dias*, 263 Kan. 331, 334-35, 949 P.2d 1993 (1997); *State v. Whitaker*, 255 Kan. 118, 125, 872 P.2d 278 (1994); *State v. Troy*, 215 Kan. 369, 372, 524 P.2d 1121 (1974); *State v. Scruggs*, 206 Kan. 423, 425, 479 P.2d 886 (1971).

We hold the instruction as given by the trial court was not clearly erroneous and does not require a reversal of defendant's conviction.

Affirmed.